2211-CC00626

Electronically Filed - St Charles Circuit Div - July 08, 2022 - 10:42 AM

IN THE CIRCUIT COURT OF ST. CHARLES, MISSOURI

ALLTRU FEDERAL CREDIT UNION,
f/k/a, 1ST FINANCIAL FEDERAL CREDIT UNION

           Plaintiff,

vs.

ALLIED SOLUTIONS, LLC,

           Defendant.

Case No.
Div.

## PETITION

Plaintiff Alltru Federal Credit Union, f/k/a, 1st Financial Federal Credit Union, by and through its undersigned counsel, files this Petition against Allied Solutions, LLC, stating its claims as follows:

### Allegations Common to All Counts

### Parties

1. Alltru Federal Credit Union, f/k/a 1st Financial Federal Credit Union ("hereinafter referred to as "plaintiff" or "Alltru") is a federally chartered credit union organized, existing and regulated in accordance with the laws of the United States of America and the National Credit Union Administration, with its principal place of business at 1232 Wentzville Pkwy, Wentzville, MO 63385. Alltru Federal Credit Union is the successor via name change of 1st Financial Federal Credit Union.

2. Allied Solutions, LLC ("hereinafter referred to as "defendant" or "Allied") is a limited liability company, organized and existing in accordance with the laws of the State of Indiana with its principal place of business in Indiana.

1



**Jurisdiction and Venue**

3.      The defendant is subject to the jurisdiction of this court by virtue of subsections (1), (2) and (5) of the long-arm statute of Missouri; §506.500, R. S. Mo.

4.      Venue is proper in this circuit pursuant to §508.010.4, R. S. Mo., in that plaintiff was first injured by the acts and conduct by defendant in St. Charles County,

**Factual Allegations**

5.      At all times relevant herein, Allied served as plaintiff's insurance broker for the agreed upon purpose of Allied using its expertise to evaluate plaintiff's insurance needs, determine the scope of coverage and coverage limits needed following review of plaintiff's business operations and risks, and to procure insurance coverage for plaintiff sufficient to adequately insure against the risks facing plaintiff's business.  Allied held itself out as having expertise in the insurance needs of financial institutions in general, and in credit unions in particular. Allied was engaged by plaintiff and agreed to fill a role of trust and confidence as a party with superior knowledge and experience in evaluating and recommending plaintiff's insurance needs and appropriate coverage levels.

6.      Allied routinely undertook a comprehensive evaluation of plaintiff's operations so that Allied could determine, recommend and procure the appropriate types and levels of insurance coverage needed for plaintiff.  In doing so, Allied requested and received substantial amounts of information and data concerning plaintiff's business operations, including the nature and scope of plaintiff's secured loan portfolio.  The information and data provided by plaintiff was requested for the purpose of advising plaintiff of the type and amount of insurance needed.

7.  The data sought and received by Allied included extensive data concerning plaintiff's car loan and collateral portfolio for the purpose of evaluating and procuring appropriate coverage relating to risks facing that business line, among others. Allied induced plaintiff's reliance based in part on Allied's understanding and monitoring of caselaw and legislation which impacted the adequacy of insurance coverage relating to plaintiff's loan and collection practices. Allied led plaintiff to believe that plaintiff had adequate coverage to insure plaintiff against risks associated with plaintiff's various business units.

8.  Further, Allied conducted risk reviews, in which it conducted an analysis of the Credit Union's operation, policies, procedures and routines with inherent risk exposures, which could lead to Credit Union losses. None of the reports that Allied prepared following the risk reviews revealed any concerns over credit union exposure to commercial class-actions arising out of repossessions and the UCC notice requirements.

9.  At no point did Allied suggest that plaintiff needed increased levels of professional liability coverage in order to adequately insure against claims, class action or otherwise, associated with wrongful debt enforcement and related notices concerning disposition of collateral.

10. In exchange for Allied's capabilities, professional guidance and services, Allied received compensation from plaintiff in the form of fees or commissions paid in exchange for Allied's expertise, evaluation, and the insurance coverage procured by Allied for plaintiff. In doing so, Allied voluntarily developed a fiduciary relationship with plaintiff concerning an area which plaintiff lacked understanding or sophistication—the insurance industry.

11. At all times relevant herein, Allied held itself out, to plaintiff specifically and to the public in general, as having expertise in the insurance requirements of credit unions, including plaintiff.

12. Plaintiff relied upon these representations and made its decisions not only on the retention of Allied as its broker, but also on the types and amounts of insurance coverage to purchase through Allied based upon Allied's recommendations.

13. On July 3, 2019, plaintiff was sued in a class action lawsuit in the City of St. Louis, Missouri, Circuit Court by Stuart Radloff, Trustee for the Bankruptcy Estate of Jerome Talamante (the "lawsuit" – Case no. 1922-CC 10792).

14. The petition alleged, inter alia, that pre- and post-sale notices plaintiff sent to the class representatives and its putative members pertaining to the repossession and disposition of collateral had violated various provisions of the Uniform Commercial Code.

15. The lawsuit further alleged that when plaintiff failed to include required information in the notices relating to redemption and sale of repossessed vehicles, the class members lost the use of their vehicles and were precluded from reclaiming their collateral before being sold.

16. The lawsuit sought damages for defamation (slander and libel) plus invasion of privacy, harm to credit worthiness, standing, capacity, character, and reputation. The petition alleged that plaintiff published false, defamatory statements in its attempt to collect a debt. Specifically, the suit alleged that plaintiff reported derogatory information regarding the class members to consumer reporting agencies.

17. The lawsuit alleged that, by sending the defective right to cure, pre- and post-sale notices, and reporting false or inaccurate derogatory information on the class members' credit

Electronically Filed - St Charles Circuit Div - July 08, 2022 - 10:42 AM

reports, the class members suffered harm to their credit worthiness, credit standing, credit capacity, character, and general reputation.

18.  The lawsuit sought actual and statutory damages, pre- and post-judgment interest, punitive damages, costs and fees.

19.  There were no allegations that plaintiff knowingly violated the UCC's notice provision, knowingly sent out defective notices, or knowingly reported false information to credit agencies as part of its collection efforts.

20.  Plaintiff reported the filing of the lawsuit to Allied for the purpose of providing notice of the claim to all carriers from whom plaintiff had purchased insurance whose policies might potentially afford coverage for any or all the claims contained therein.

21.  Of the carriers who were notified, all ultimately denied coverage. However, they agreed to provide a defense under a reservation of rights.

22.  Plaintiff and their class action defense counsel concluded that the claims set forth in the class action were meritorious, that a class would likely be certified and that plaintiff was exposed to the potential for a judgment in excess of $12,000,000.00.

23.  Being faced with this potential exposure, all of which would be uninsured if the carriers were correct regarding their coverage positions, plaintiff, with advice of counsel, elected to settle the lawsuit in order to cap its exposure. The settlement called for a cash payment from plaintiff of $4,750,000, as well as the forgiveness of unpaid loan balances exceeding $6 Million.

24.  Undersigned counsel was engaged to pursue enforcement of the insurance policies sold to plaintiff under Allied's watch, resulting in one settlement that is subject to a confidentiality provision.

25. Plaintiff has incurred and will continue to incur significant attorney's fees in the pursuit of those claims.

26. Allied served as an insurance broker to a different St. Louis-based credit union by the name of Anheuser Busch Employees' Credit Union ("AB"), which is now known as Together Credit Union. In March of 2016, AB was sued via counterclaim in a putative class action lawsuit. The plaintiff in that case, Daniel Wells, was represented by the same law firm that represented the plaintiffs in the lawsuit against Alltru. (A true and accurate copy of the Answer and Counterclaim is attached hereto as Exhibit A.)

27. AB gave notice of this lawsuit to Allied on or about November 16, 2016.

28. The allegations in the Wells Counterclaim are strikingly similar to the allegations lodged against Alltru in the class action lawsuit filed against it.

29. Although Allied knew or certainly should have known of the potential for class-action lawsuits like these and the need for credit unions to insure against such risks, it received direct and actual notice of such claims and the potentially devastating impact of such claims on its credit union clients when it received the Wells counterclaim.

30. The receipt of the Wells counterclaim should have prompted Allied to take immediate action to ensure that the credit unions it represented were adequately insured against the potential massive harm class actions of this nature can cause. In AB's case, it had to fund a settlement with its own assets in the amount of $19,750,000 after the insurance carriers whose policies Allied recommended denied coverage.

31. There should have been a heightened degree of alarm as it pertained to Alltru because a St. Louis based class-action plaintiff's firm was involved, and based on Allied's claimed

6

Electronically Filed - St Charles Circuit Div - July 08, 2022 - 10:42 AM

expertise it either knew or should have known that such firms actively seek out similar types of cases—which is exactly what happened to Alltru.

32. In addition, Allied received a copy of a coverage letter sent by Travelers which set forth an exclusion for professional liability coverage in the Property & General Liability policy that Allied had recommended to AB. Patrick Touhey, one of the Allied brokers in charge of AB's account, wrote to his contact at AB in September of 2017, 22 months prior to the filing of the class action against Alltru, stating that Traveler's exclusion was "standard". Yet, for a three-year period covered by the class action claims, the overwhelming majority of Alltru's insurance coverage was placed by Allied with Travelers' Property & General Liability Company-which contained the exact same exclusion as contained in the policy issued to AB.

33. AB subsequently sued Travelers to seek a judicial determination of their coverage obligations. The United States District Court for the Eastern District of Missouri determined there was no coverage under the Travelers' policies which were recommended and placed by Allied. The ruling was affirmed by the Eighth Circuit United States Court of Appeals.

34. At all times relevant hereto, there were available in the insurance market place professional liability policies that were designed to cover, among other things, class-action lawsuits such as those filed against AB and Alltru. Indeed, Travelers offered such policies.

35. Allied had ample time to ensure that Alltru was adequately protected against the types of claims set forth in the Wells counterclaim, but did nothing.

36. As a direct result of Allied's failure to recommend and procure the appropriate type of coverage with policy limits that were reflective of the risk associated with the size and scope of plaintiff's operations, plaintiff was woefully uninsured and underinsured.

7

## COUNT I-NEGLIGENCE

37. Plaintiff realleges and adopts herein by this reference paragraphs 1-36 as though fully set forth herein.

38. As insurance broker to plaintiff, Allied owed a duty of reasonable skill, care, and diligence in obtaining the insurance required by plaintiff to protect against known and identifiable risks associated with plaintiff's business.

39. As part of its due diligence in understanding the nature and scope of the plaintiff's operations, Allied learned early on that plaintiff made consumer loans to its members for the purchase of motor vehicles.

40. Allied also learned that plaintiff took a security interest in the vehicles that were the subject of these consumer loans and that plaintiff routinely pursued enforcement of its loans and security interests when the loans went into default. As part of its underwriting investigation, Allied learned that Alltru repossessed hundreds of vehicles every year.

41. At all relevant times, Allied knew or should have known that plaintiff would be exposed to class-based civil liability for mistakes made in the enforcement of loans and security interests, such as the potential for inclusion of mistaken information within notices issued to borrowers in connection with default, repossession, and the sale of collateral.

42. At all relevant times, Allied knew or should have known that the issuance of default and sale-related notices that violated consumer laws and regulations exposed plaintiff to class action liability.

43. At all relevant times, Allied had actual knowledge and should have otherwise known about lawsuits against credit unions arising out of the issuance of default and sale notices

8

that violated consumer laws and regulations which were being pursued in St. Louis and around the country.

44. Allied violated its duty of care by failing to recommend the appropriate type of coverage with sufficient limits to protect against consumer class action litigation such as the Radloff class action.

45. In doing so, Allied breached its duty to plaintiff after plaintiff had justifiably relied upon Allied's direction and advice when purchasing insurance as directed by Allied.

46. As a direct result of Allied's departure from the standard of care, plaintiff sustained actual damages in excess of $10,000,000.00.

## COUNT II-BREACH OF FIDUCIARY DUTY

47. Plaintiff realleges and adopts herein by this reference paragraphs 1-46 as though fully set forth herein.

48. As plaintiff's insurance broker, Allied owed fiduciary duties to plaintiff, including the duty of loyalty and duty of care.

49. Throughout the course of the client-broker relationship between plaintiff and Allied and based upon Allied's extensive review of plaintiff's business operations, Allied agreed to provide and did provide insurance coverage recommendations specific to plaintiff's business operations and related risks. These recommendations included the appropriateness and adequacy of policy type as well as policy limits, and were based upon both Allied's review of plaintiff's business and Allied's stated superior knowledge of insurance risks and needs facing credit unions such as plaintiff.

50. Plaintiff relied upon Allied's representations about their expertise in providing insurance products to credit unions and Allied's review of plaintiff's business and loan

9

portfolios, and plaintiff specifically relied upon Allied's recommendations for the types and amounts of insurance coverage. Allied's indication of its superior skill set and knowledge base combined with its thorough review of plaintiff's business lines and specific insurance needs created a fiduciary relationship between Allied and plaintiff. The fiduciary relationship was created by agreement between Allied and plaintiff.

51. Allied breached its fiduciary duties to plaintiff by failing to recommend and place the appropriate type of coverage with adequate limits to protect against consumer class action litigation such as the Radloff class action.

52. As a direct result of Allied's breach of its fiduciary duties, plaintiff sustained actual damages in excess of $10,000,000.00.

WHEREFORE, Plaintiff prays for judgment against Allied for an amount in excess of $25,000, for prejudgment interest, for costs and attorney's fees incurred in the pursuit of insurance coverage and for its costs incurred herein.

Respectfully submitted:

MARTIN, PRINGLE, OLIVER,
   WALLACE & BAUER, L.L.P.


By: /s/ David E. Larson
David E. Larson, MO #27146
One Main Plaza
4435 Main Street, Suite 920
Kansas City, MO 64111
(816) 753-6006
(816) 502-7898 fax
delarson@martinpringle.com
*Attorney for Plaintiff*

Your Missouri Courts

Search for Cases by: Select Search Method...

Judicial Links | eFiling | Help | Contact Us | Print

GrantedPublicAccess **Logoff GREGORY_COOK**

2211-CC00626 - ALLTRU CREDIT UNION V ALLIED SOLUTIONS LLC (E-CASE)

FV File Viewer | Case Header | Parties & Attorneys | Docket Entries | Charges, Judgments & Sentences | Service Information | Filings Due | Scheduled Hearings & Trials | Civil Judgments | Garnishments/ Execution

Click here to eFile on Case
**Click here to Respond to Selected Documents**

**Sort Date Entries:** ◉ Descending ○ Ascending

**Display Options:** All Entries

**07/08/2022**

☐ **Filing Info Sheet eFiling**
**Filed By:** DAVID ERIC LARSON

☐ **Note to Clerk eFiling**
**Filed By:** DAVID ERIC LARSON

☐ **Pet Filed in Circuit Ct**
Petition.
**Filed By:** DAVID ERIC LARSON
**On Behalf Of:** ALLTRU CREDIT UNION

☐ **Judge Assigned**

Case.net Version 5.14.54 Return to Top of Page Released 07/15/2022

