IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

ALLTRU FEDERAL CREDIT UNION,
f/k/a, 1ST FINANCIAL FEDERAL CREDIT
UNION

               Plaintiff,

vs.

ALLIED SOLUTIONS, LLC,

               Defendant.

Case No.  4:22-cv-819-MTS

**MEMORANDUM IN OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT, OR, IN THE ALTERNATIVE, TO STRIKE PLAINTIFF'S REQUESTS FOR ATTORNEYS' FEES AND PRE-JUDGMENT INTEREST**

COMES NOW Plaintiff, by and through undersigned counsel, and submits the following Memorandum in Opposition to the Defendant's Motion to Dismiss Plaintiff's Complaint, or, in the alternative, To Strike Plaintiff's Requests for Attorneys' Fees and Pre-Judgment Interest:

## I.      Factual and Procedural Background

Plaintiff is a Missouri credit union located in St. Charles, Missouri.  Plaintiff retained the services of Allied Solutions, LLC ("Defendant"), an Indiana limited liability company, to serve as Plaintiff's insurance broker from 2013 until 2019.  Specifically, Defendant was retained by Plaintiff for the agreed upon purpose to evaluate Plaintiff's insurance needs, determine the types of coverage and coverage limits needed, and obtain sufficient insurance coverage to insure against the risks facing Plaintiff's financial services business.

While Plaintiff was competently staffed as a credit union, its knowledge of the insurance industry was scant at best.  Indeed, Plaintiff was naïve about what insurance coverage it needed and what products were available to address the relevant risks facing its business. Plaintiff informed Allied of its lack of sophistication in this area.  Defendant agreed to provide the needed guidance based on its superior knowledge and expertise in the insurance industry. Indeed, Defendant held itself out as possessing the very expertise which Plaintiff required. Defendant undertook comprehensive evaluations of Plaintiff's operations, requesting and processing substantial amounts of data concerning Plaintiff's business.  This data included the nature and scope of Plaintiff's car loan and collateral portfolio.  Defendant learned that Plaintiff made consumer loans to its members for the purchase of motor vehicles.  Defendant also learned that Plaintiff took a security interest in the vehicles that were the subject of the consumer loans, and that Plaintiff routinely repossessed vehicles when the loans went into default.  Defendant knew that these activities required strict adherence to consumer protection laws and that the violation of such laws can and does lead to class-action exposure.

After learning about the substantial risks Plaintiff faced based from its business operations, Defendant provided guidance and recommended that Plaintiff place the vast majority of Plaintiff's liability coverage in commercial general liability ("CGL") and following-form excess policies, with minimal coverage through Management Liability ("ML") policies.  As held by the Honorable Catherine D. Perry, CGL policies did not provide professional liability coverage or any other coverage tailored to credit unions.[1]  In fact, unbeknownst to Plaintiff and as found by Judge Perry,

---

[1] The ruling was in the case of Anheuser Busch Employees' Credit Union vs Travelers Property Casualty Company of America, et al, Case No. 4:18 CV 1208 CDP. In that case, a different credit union filed a declaratory judgment action seeking a determination that the CGL policies and following-form excess policies issued by Travelers to the credit union afforded coverage for the same type of consumer class action lawsuit that is the basis of the case *sub judice*. Judge Perry granted the summary judgment motion filed by Travelers-finding no coverage under the policies and enforcing an exclusion in the policy for "Professional Credit Union Financial Services." That ruling, entered April 6, 2020, was affirmed by the 8th Circuit.

the policies recommended by Defendant actually excluded coverage for the specific industry in which Plaintiff operated and provided scant protection for the consumer class action suits that were known to Defendant to be a substantial risk facing Plaintiff.

Despite its stated expertise, and the agreement to assess and define the specific coverages and limits needed by Plaintiff, Defendant never informed Plaintiff that the majority of the liability coverage recommended would do nothing to afford protection against one of, if the not the biggest, risk of loss to Plaintiff's business—a consumer class action lawsuit.  Despite its knowledge of the availability of this type of coverage, Defendant failed to suggest, recommend or offer a quote for a professional liability policy tailored to financial services entities, or even a professional liability policy with appropriately increased coverage limits.  Plaintiff was left unaware of the exposure resulting from the ill-fitting mix of insurance coverage uniformly recommended by Defendant. Defendant had specific knowledge of Plaintiff's business and risks, and it ensured Plaintiff that it could rely on Defendant's expertise.  All the while, Defendant had knowledge that one of its other clients, Anheuser Busch Employees' Credit Union, with a virtually identical consumer auto loan core business, had been sued in a consumer class-action case that resulted in a loss in excess of $20 million.  Defendant had actual knowledge that Travelers had denied coverage. Yet, Defendant incredulously directed Plaintiff to focus on CGL insurance coverage as its primary liability coverage, leaving embarrassingly little coverage applicable to the class action claims faced by Plaintiff.

After following Defendant's specific recommendations, Plaintiff later found itself faced with a class-action lawsuit arising out of faulty consumer notices.  Specifically, the lawsuit alleged that the plaintiff sent noncompliant notices to borrowers concerning the disposition of repossessed

automobiles-which was the exact same claim that was asserted against another of Allied's St. Louis-based client three years before.

Faced with excessive potential exposure because of the class action lawsuit, Plaintiff ultimately settled the lawsuit, which required a cash payment of $4,750,000, and the forgiveness of unpaid loan balances exceeding $6 Million.

For the reasons set forth below, Defendant's motion should be denied, as Plaintiff has alleged sufficient additional facts that, when read broadly and construed in favor of Plaintiff, establish Defendant's expanded duty as Plaintiff's insurance broker.

## III.   <u>Arguments and Authorities</u>

### A.   **Legal Standard for Motions to Dismiss.**

"The issue on a motion to dismiss is <u>not</u> whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his or her claim." *Tower Vill., Inc. v. Serv. Emps. Int'l Union, AFL-CIO, CLC Loc. 2000*, 377 F. Supp. 2d 733, 735 (E.D. Mo. 2005) (emphasis added) (citation omitted).  "The notice pleading standard of FRCP 8(a)(2) requires a plaintiff to give 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"  *Duffy v. Anheuser-Busch Companies, LLC*, 449 F. Supp. 3d 882, 886 (E.D. Mo. 2020).  "To meet this standard and to survive a FRCP 12(b)(6) motion to dismiss, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Id.* at 886–87 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "<u>Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . .  claim is and the grounds upon which it rests.</u>"  *Brown v. Adtalem Glob. Educ., Inc.*, 421 F. Supp. 3d 825, 831 (W.D. Mo. 2019) (emphasis added) (citation omitted) (internal quotation marks omitted).

"When ruling on a motion to dismiss, a court must liberally construe a complaint in favor of the plaintiff." *Duffy*, 449 F. Supp. 3d at 887 (internal quotation marks omitted). "The Court must accept the plaintiff's factual allegation as true and view them in the light most favorable to the Plaintiff." *Brown*, 421 F. Supp. 3d at 831 (internal quotation marks omitted). "<u>[A] dismissal under Rule 12(b)(6) should be granted only in the unusual case in which plaintiff includes allegations that show, on the face of the complaint, that there is some insuperable bar to relief.</u>" *Tower Village*, 377 F. Supp. 2d at 735 (emphasis added) (internal quotation marks omitted).

In applying this standard, courts must consider the Complaint itself, not a defendant's "characterization of the allegations contained therein." *See Tower Village*, 377 F. Supp. 2d at 737 (denying defendant's motion to dismiss, and stating that the Court "must be mindful that the issue before it on this particular Motion is not whether Plaintiff ultimately will prevail, but is instead whether Plaintiff is entitled to present evidence in support of its claim"). In overturning a premature dismissal, the Eight Circuit noted that district courts must give sufficient "deference to the standards applicable to a motion to dismiss under Fed.R.Civ.P. 12(b)(6)." *See Robinson v. MFA Mut. Ins. Co.*, 629 F.2d 497, 499 (8th Cir. 1980) (reversing the district court's decision to grant defendant's motion to dismiss, and stating, among other things, that the district court gave insufficient deference to the 12(b)(6) motion to dismiss standard, as plaintiff had done enough to allege a tort claim that entitled plaintiff to appropriate discovery).

**B.      Through the agreement of the parties and the special relationship between the parties, as alleged in Plaintiff's Complaint, Defendant had expanded and fiduciary duties as Plaintiff's broker.**

In Missouri, "it is settled law that when a broker is acting as the agent of an insured, it has a fiduciary duty to perform its duties with reasonable care, skill and diligence." *Emerson Elec. Co. v. Marsh & McLennan Companies*, 362 S.W.3d 7, 9 (Mo. 2012). "The scope of the agency of

either an agent or a broker *normally* is limited to procuring the insurance requested by the insured." *Id.* at 13 (emphasis added) (citations omitted). "Missouri long has held that a broker has no duty to advise the insured about what insurance he needs or what insurance to buy *unless it specifically undertakes to do so.*" *Id.* at 9 (emphases added).

The Missouri Supreme Court in *Emerson* identified and explained that the general duty of insurance brokers can be expanded. "To the extent that the petition alleges [broker] undertook duties in addition to those imposed by law, its failure to fulfill them may be actionable." *Id.* at 10. A broker's duty to an insured can be expanded by contract, course of conduct, or a combination of the two. *Id.* at 19. The *Emerson* court further noted:

> **This Court's analysis does not mean that [broker] was free to obtain insurance that did not meet [insured's] needs** or that was unreasonably costly or imprudent. [Broker] had a fiduciary duty to use reasonable care, skill and diligence in procuring insurance for [insured]. Any such failure would be actionable . . . because it would constitute a failure to exercise the degree of care required in procuring a policy for the insured.

*Id.* at 19 (emphasis added).

The Court also reinforced the holding in *Manzella, v Gilbert-Magill Co., 965 S.W.2d 221* (Mo. App. 1998), in which that Court determined that an insurance agent's duties to the insured may expand if there is a "special relationship or extended agency agreement between them. *Id* at p. 227.

The Court also cited with the approval the Restatement 3d of Agency § 8.08, which states:

§ 8.08  Duties of Care, Competence, and Diligence

> Subject to any agreement with the principal, an agent has a duty to the principal to act with the care, competence, and diligence normally exercised by agents in similar circumstances. Special skills or knowledge possessed by an agent are circumstances to be taken into account in determining whether the agent acted with due care and diligence. If an agent claims to possess special skills or knowledge, the agent has a duty to the principal to act with the care, competence, and diligence normally exercised by agents with such skills or knowledge.

Plaintiff has alleged that the Defendant held itself out to have special expertise concerning the risks faced by credit unions and they specifically marketed the skills to Plaintiff among other credit unions.  Plaintiff had a long-standing relationship with Allied. At the very least, a question of fact exists as to whether the relationship and Allied's claimed special skills expands the general duty owed by insurance brokers.

It was on this basis that Missouri Supreme Court ruled in *Emerson* that it was premature to determine, as a matter of law, that the broker did not breach any duties to the insured.  *Id.* at 20. In reversing the trial court's judgment on the pleadings, the Court held that plaintiff insured's petition, when read very broadly, alleged that broker "undertook duties in addition to those implied by law, [and broker's] failure to fulfill them may be actionable."

Here, as set forth below, Plaintiff has alleged sufficient additional facts which illustrate the depths to which Defendant went to learn about Plaintiff's business, understand the risks associated with Plaintiff's business, and obtain insurance coverage for Plaintiff that would ensure that the risks to Plaintiff's business were adequately addressed.

As the Missouri Supreme Court stated in *Emerson*, a broker is not "free to obtain insurance that [does] not meet [an insured's] needs."  That is exactly what is alleged to have happened here and, thus, cannot logically be susceptible to dismissal for failure to state a claim.  Through the conduct of the parties, cited above, Defendant's duty as Plaintiff's broker expanded by agreement of the parties because, Defendant knew the risks associated with Plaintiff's business, Defendant had superior knowledge of the insurance products needed to address those risks, and knew that Plaintiff specifically hired Defendant to obtain the appropriate insurance to address the risks. Defendant's subsequent breach of its expanded duty to Plaintiff is actionable, as it was in the *Emerson* case.  It is premature at this juncture to determine that, as a matter of law, an expanded

duty did not exist or that Defendant did not breach that duty to Plaintiff.  The well pled facts in the First Amended Complaint satisfy the requirements of Missouri law in all respects.  Therefore, Defendant's Motion to Dismiss must be denied.

**C.     The Defendant's tortured attempt to downplay and escape the effect of Judge Autry's ruling.**

In what can only be viewed as a stunning disregard of a previous ruling by a judge on this Court, the Defendant seeks dismissal of a lawsuit in its entirety in the face of a ruling by Judge Autrey in which he determined that a Complaint by another credit union against the same defendant Allied, which contained virtually identical allegations, stated a valid cause of action under Missouri law.  All this Court needs to do is to read the Order denying Allied's motion to dismiss the First Amended Complaint in the case of Together Credit Union v. Allied Solutions, Case No. 4:20CV1084-HEA.  (A copy of the Opinion Memorandum and Order is attached hereto as Exhibit A.)

As this Court will see, Judge Autrey detailed the allegations from the First Amended Complaint in that case, which were appropriately deemed as true for purposes of that motion and concluded that the Plaintiff Together Credit Union (f/k/a Anheuser Busch Employees' Credit Union) had adequately pled its causes of action. Those alleged facts were, as set forth in the Order, as follows:

> At all times relevant herein, Defendant served as Plaintiff's insurance broker for the agreed upon purpose of evaluating Plaintiff's insurance needs, determining the scope of coverage and coverage limits needed, and obtaining bids and procuring insurance coverage for Plaintiff sufficient to adequately insure against the risks facing Plaintiff's business. Defendant held itself out as and was engaged by Plaintiff to fill a role of trust and confidence as a party with superior knowledge and experience in evaluating insurance needs and procuring appropriate insurance coverage for financial institutions.

Defendant routinely undertook a comprehensive evaluation of Plaintiff's operations so that Defendant could determine, recommend, and procure the appropriate types and levels of insurance coverage needed for Plaintiff. In doing so Defendant requested and received substantial amounts of information and data concerning Plaintiff's business operations, including the nature and scope of Plaintiff's secured loan portfolio.

The data sought and received by Defendant included extensive data concerning Plaintiff's car loan and collateral portfolio for the purpose of evaluating and procuring appropriate coverage relating to Plaintiffs' business lines. Defendant induced Plaintiff's reliance upon Defendant's understanding and monitoring of caselaw and legislation which impacted the adequacy of insurance coverage relating to Plaintiff's loan and collection practices. Defendant led Plaintiff to believe that Plaintiff had adequate coverage to insure Plaintiff against risks associated with Plaintiff's various business units.

Further, Defendant and its representatives attended meetings of Plaintiff's Board of Directors in order to provide Plaintiff and its Board of Directors with confidence in the types and levels of insurance coverage suggested and procured by Defendant on behalf of Plaintiff.

At no point did Defendant suggest that Plaintiff needed increased levels of professional liability coverage rather than commercial general liability coverage, as suggested by Defendant, to adequately insure against claims, class action or otherwise, associated with wrongful debt enforcement and related notices concerning disposition of collateral.

In exchange for Defendant's capabilities, professional guidance and services, Defendant received compensation from Plaintiff in the form of fees or commissions based upon Defendant's expertise, evaluation, and the insurance coverage procured by Defendant for Plaintiff.

At all times relevant herein, Defendant held itself out, to Plaintiff specifically and to the public in general, as having expertise in the insurance requirements of financial institutions, including Plaintiff. Plaintiff relied upon these representations and made its decisions on the types and amounts of insurance coverage to purchase through Defendant based upon Defendant's recommendations.
(Opinion, Memorandum and Order, Ex. A, at pp. 2-4)

The allegations contained in paragraphs 5 through 12 of the Complaint in this case are

virtually identical to the allegations recited by Judge Autrey.  The only allegation missing was

that Allied regularly attended Plaintiff's Board of Directors meetings.  However, the Complaint

that is at issue here included additional allegations not contained in the First Amended Complaint filed by Together Credit Union, namely, that Allied had actual knowledge of the potential for class-action exposure to credit unions that repossessed automobiles because Allied was provided a copy of that lawsuit and learned that Together Credit Union had limited insurance coverage to insulate against that risk.  Yet, armed with that actual knowledge, Allied did not share that information with the Plaintiff.

After analyzing Missouri case law about when and under what circumstances an insurance broker can have an expanded duty to its client, which mirrors the analysis of Missouri law set forth above, Judge Autrey found as follows:

> To the extent that the Amended Complaint alleges that Defendant "undertook duties in addition to those imposed by law, its failure to fulfill them may be actionable." *Id.* at 10. Here, the Amended Complaint alleges that Defendant took an expanded role in procuring insurance coverage for Plaintiff. The Court observes taking the allegations contained in the Amended Complaint as true, Plaintiff has adequately pled its action. Plaintiff is not required to prove the merits of its cause of action at the pleading stage, rather Plaintiff is required only to set out a plausible claim.

(Opinion Memorandum and Order, Ex. A, at p. 7).

Plaintiff would argue that great deference should be accorded to Judge Autrey's ruling and the Defendant has come forth with no valid reasons why this Court should rule any differently.

**D.      Missouri federal courts have held it is premature at this juncture to grant Defendant's Motion to Dismiss.**

This is not the first time an insured has alleged that its insurance broker breached an expanded duty, and the insurance broker in turn filed a motion to dismiss on the basis that it had no general duty to advise the insured on the insured's insurance needs.  In fact, multiple Missouri federal courts have addressed this same issue and denied the insurance brokers' motions to dismiss, finding that a fact issue existed regarding whether the insurance brokers had an expanded duty to

the insured, and further stating that such fact questions were more appropriate for a fact-finder or a summary judgment motion.  *See, e.g.*, *Principal Nat'l Life Ins. Co. v. Rothenberg*, No. 4:19CV2360 JCH, 2020 WL 95668 (E.D. Mo. Jan. 8, 2020) (finding it was premature to grant the insurance agency's motion to dismiss, and allowing the insured an opportunity to engage in discovery in an effort to show that the insurance broker was an agent of the insurance agency); *Allstate Indem. Co. v. Dixon*, No. 6:14-cv-03489-MDH, 2015 WL 6150586, at *1 (W.D. Mo. Oct. 19, 2015) (denying the motion to dismiss and stating "the allegedly expanded duty, and whether counterclaim defendants' acts/omissions breached the allegedly expanded duty are all questions more appropriately reserved for a fact-finder or a summary judgment motion"); *G.W. Foods, Inc. Health, Welfare, and Benefits Plan v. WH Adm'rs, Inc.*, No. 6:17-cv-03380-SRB, 2018 WL 3414323, at *10 (W.D. Mo. May 17, 2018) (dismissing the insurance broker's motion to dismiss, finding that plaintiffs pled sufficient facts to state a duty and to support a possible breach of that duty, with plaintiff's alleged facts construed as true at that stage of the litigation); *C.F.C.S. Invs., LP v. Transamerica Occidental Life Ins. Co., et al.*, No. 4:16-CV-00396 JAR, 2017 WL282403, at *5 (E.D. Mo. Jan. 23, 2017) (denying the insurance broker's motion to dismiss, stating "it would be premature for the Court to determine on a motion to dismiss, as opposed to a motion for summary judgment," whether plaintiff is entitled to relief as a matter of law).

As these Missouri federal cases illustrate, when Plaintiff's allegations in its First Amended Complaint are read in the light most favorable to Plaintiff, it would be premature at this juncture to determine that, as a matter of law, Defendant did not undertake an expanded duty in addition to those implied by law.   Therefore, Defendant's Motion to Dismiss must be denied.

**E.      Plaintiff's claim for attorney's fees is appropriate.**

The Defendant contends that the Plaintiff's claim for attorney's fees should be stricken from the Complaint.  It is premature to do so.  Defendant does not appreciate the difference between the award of attorney's fees to a prevailing party and the inclusion of previously incurred attorney's fees as consequential damages.  The Plaintiff's claims fall within the latter category.

"Where the natural and proximate result of a wrong or breach of duty is to involve the wronged party in collateral litigation, reasonable attorneys' fees necessarily and in good faith incurred in protecting himself from the injurious consequence thereof are proper items of damages." *Meyer v. Purcell*, 405 S.W.3d 572, 580 (Mo. Ct. App. 2013) (quoting *Ohlendorf v. Feinstein*, 697 S.W.2d 553, 556 (Mo. App. E.D. 1985)); *Johnson v. Mercantile Trust Co. Nat'l Ass'n.*, 510 S.W.2d 33, 40 (Mo. 1974).

It is clearly premature to make evidentiary rulings on the scope of the damages that plaintiff is entitled to.  The motion to strike should be denied.

**F.      Plaintiff's claim for prejudgment interest is appropriate.**

Defendant also requests that this court strike the Plaintiff's claims for prejudgment interest. The determination of whether or not a damage claim is liquidated requires an adjudication on the facts.  Here is how Missouri law views the situation:

Whether a party is entitled to prejudgment interest is governed by Section 408.020... Section 408.020, in pertinent part, states:

Creditors shall be allowed to receive interest at the rate of nine percent per annum, when no other rate is agreed upon, for all moneys after they become due and payable, on written contracts . . . after they become due and demand of payment is made . . . .

Parties may also agree on a specific rate of interest which will control if it is not otherwise excessive under the law. *Schnucks Carrollton Corp. v. Bridgeton Health and Fitness Inc.*, 884 S.W.2d 733, 740 (Mo. App. E.D. 1994). If no other rate of interest is agreed upon, the rate in Section 408.020 is applicable. *Id*. Prejudgment

interest may only be awarded where the claim is liquidated. *Miller v. Gammon & Sons, Inc.*, 67 S.W.3d 613, 624 (Mo. App. W.D. 2001). To be liquidated, the claim must be fixed and determined or readily ascertainable by computation or a recognized standard. *Id*. The award of prejudgment interest in a case in which damages are liquidated is not a matter of court discretion; it is compelled. *Comens*, 335 S.W.3d at 82; *Holtmeier v. Dayani*, 862 S.W.2d 391, 407 (Mo. App. E.D. 1993). The purpose of statutory prejudgment interest is to promote settlement of lawsuits and fully compensate plaintiffs by accounting for the time-value of money. *Comens*, 335 S.W.3d at 80. In an action for breach of a written contract, interest ordinarily runs from the date of the breach or the time when payment was due under the contract. *Miller*, 67 S.W.3d at 624-25.

Doe Run is entitled to prejudgment interest as its damages were readily determinable and ascertainable by computation. LMI's contention that Doe Run failed to make a demand for payment definite as to time and amount is belied by the facts. Doe Run's damages were the costs it incurred in responding to the EPA remediation orders. At trial, Doe Run presented evidence that it sent LMI purchase orders, invoices, and pay stubs that reflected the costs incurred… Further, "exact calculation is not necessary for a claim to be liquidated." *Weinberg v. Safeco Ins. Co. of Ill*., 913 S.W.2d 59, 62 (Mo. App. E.D. 1995). The fact that LMI presented several coverage defenses and disputed some of the costs is of no consequence. Missouri courts have allowed prejudgment interest for insurance claims where the parties did not agree to the amount due under the policy. *Watters*, 136 S.W.3d at 111-12…

LMI argues that Doe Run never made a demand for payment before trial. Even if Doe Run did not demand payment before it filed the lawsuit, which we do not find, "the filing itself constitutes a demand." *Watters*, 136 S.W.3d at 111.

*Doe Run Res. Corp. v. Certain Underwriters at Lloyd's London*, 400 S.W.3d 463, 476-77

(Mo. Ct. App. 2013).

As with the claim for attorney's fees, it is at a minimum premature for the Court to determine whether or not the Plaintiff is entitled to prejudgment interest. The Motion to Strike this damage claim should be denied.

## IV.    <u>Conclusion</u>

For the reasons set forth above, Plaintiff respectfully requests that the Court deny in its entirety the Defendant's Motion to Dismiss or in the Alternative Motion to Strike (Doc. 4), and for any other relief the Court deems just and proper. Alternatively, if the Court deems the current

Complaint as insufficient to state a cause of action, Plaintiff seeks leave to amend to cure any deficiencies noted by the Court.

Respectfully submitted:

MARTIN, PRINGLE, OLIVER,
   WALLACE & BAUER, L.L.P.


By: /s/ David E. Larson
David E. Larson, MO #27146
One Main Plaza
4435 Main Street, Suite 920
Kansas City, MO 64111
(816) 753-6006
(816) 502-7898 fax
delarson@martinpringle.com
*Attorney for Plaintiff*



EXHIBIT
A

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| **TOGETHER CREDIT UNION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 4:20CV1084 HEA** |
| | ) | |
| **ALLIED SOLUTIONS, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion to Dismiss Plaintiff's

First Amended Complaint, [Doc. No. 21]. Plaintiff opposes the motion. For the

reasons set forth below, the Defendant's Motion will be denied.

## Facts and Background

Plaintiff, Together Credit Union, formerly known as Anheuser-Busch

Employees' Credit Union, filed this action in the Circuit Court for the City of St.

Louis, Missouri, against its insurance broker, Defendant Allied Solutions, LLC, for

negligence (Count I) and breach of a fiduciary duty (Count II) in failing to procure

professional liability insurance for Plaintiff.

On August 17, 2020, Defendant removed this action pursuant to the Court's

diversity jurisdiction and filed a Motion to Dismiss Plaintiff's Petition for failure to

state a claim. This Court found Plaintiff's Petition alleged conclusions without any

factual support. The Court further found Plaintiff is required to set forth sufficient facts to plausibly state a claim for negligence and breach of a fiduciary duty beyond the usual duty of care in procuring insurance. This Court granted Plaintiff leave to file an Amended Complaint. On April 5, 2021, Plaintiff filed its Amended Complaint.

On April 19, 2021, Defendant moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), arguing Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted, which Plaintiff opposes.

Plaintiff's First Amended Complaint alleges, in pertinent part:

At all times relevant herein, Defendant served as Plaintiff's insurance broker for the agreed upon purpose of evaluating Plaintiff's insurance needs, determining the scope of coverage and coverage limits needed, and obtaining bids and procuring insurance coverage for Plaintiff sufficient to adequately insure against the risks facing Plaintiff's business. Defendant held itself out as and was engaged by Plaintiff to fill a role of trust and confidence as a party with superior knowledge and experience in evaluating insurance needs and procuring appropriate insurance coverage for financial institutions.

Defendant routinely undertook a comprehensive evaluation of Plaintiff's operations so that Defendant could determine, recommend, and procure the appropriate types and levels of insurance coverage needed for Plaintiff. In doing so

Defendant requested and received substantial amounts of information and data concerning Plaintiff's business operations, including the nature and scope of Plaintiff's secured loan portfolio.

The data sought and received by Defendant included extensive data concerning Plaintiff's car loan and collateral portfolio for the purpose of evaluating and procuring appropriate coverage relating to Plaintiffs' business lines. Defendant induced Plaintiff's reliance upon Defendant's understanding and monitoring of caselaw and legislation which impacted the adequacy of insurance coverage relating to Plaintiff's loan and collection practices. Defendant led Plaintiff to believe that Plaintiff had adequate coverage to insure Plaintiff against risks associated with Plaintiff's various business units.

Further, Defendant and its representatives attended meetings of Plaintiff's Board of Directors in order to provide Plaintiff and its Board of Directors with confidence in the types and levels of insurance coverage suggested and procured by Defendant on behalf of Plaintiff.

At no point did Defendant suggest that Plaintiff needed increased levels of professional liability coverage rather than commercial general liability coverage, as suggested by Defendant, to adequately insure against claims, class action or otherwise, associated with wrongful debt enforcement and related notices concerning disposition of collateral.

3

In exchange for Defendant's capabilities, professional guidance and services, Defendant received compensation from Plaintiff in the form of fees or commissions based upon Defendant's expertise, evaluation, and the insurance coverage procured by Defendant for Plaintiff.

At all times relevant herein, Defendant held itself out, to Plaintiff specifically and to the public in general, as having expertise in the insurance requirements of financial institutions, including Plaintiff.

Plaintiff relied upon these representations and made its decisions on the types and amounts of insurance coverage to purchase through Defendant based upon Defendant's recommendations.

## Standard of Review

Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.Civ.P. 8(a)(2). If a pleading fails to state a claim upon which relief can be granted, an opposing party may move to dismiss it. *See* Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). This Court "grants all reasonable inferences to the non-moving party."

*Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018) (citations omitted).

When ruling on a motion to dismiss, the Court "must liberally construe a complaint in favor of the plaintiff," *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010), and must grant all reasonable inferences in its favor. *Lustgraaf v. Behrens*, 619 F.3d 867, 872–73 (8th Cir. 2010). Although courts must accept all factual allegations as true, they are not bound to take as true "a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citation omitted); *Iqbal*, 556 U.S. at 677–78. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster. *Iqbal*, 556 U.S. at 678. A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *McShane Constr. Co., LLC v. Gotham Ins. Co.*, 867 F.3d 923, 927 (8th Cir. 2017), *quoting Iqbal*, 556 U.S. at 678.

## Discussion

Under Missouri law,[1] insurance brokers do not "have a duty to advise the insured on its insurance needs or on the availability of particular coverage, *unless*

---

[1] Since this action was brought pursuant to this Court's diversity of citizenship jurisdiction, 28 U.S.C. § 1332, Missouri State Law applies to the substantive issues. *Winthrop Res. Corp. v. Stanley Works*, 259 F.3d 901, 904 (8th Cir. 2001).

*[the broker] specifically agree[s] to do so." Emerson Electric Co. v. Marsh &*

*McLennan Companies*, 362 S.W.3d 7, 13 (Mo. banc 2012) (emphasis added).

> [I]t is settled law that when a broker is acting as the agent of an insured, it has a fiduciary duty to perform its duties with reasonable care, skill and diligence. . . But the scope of the agency, and hence of the duty, of a broker to an insured is limited. While a broker has a duty to act with reasonable care, skill and duty in procuring insurance, Missouri long has held that a broker has no duty to advise the insured about what insurance he needs or what insurance to buy unless it specifically undertakes to do so.

*Id.*, at 9.

The scope of a broker's duty may vary depending on its agreement with the insured and the relationship between the parties. *Id.* at 10.

Defendant argues that the Amended Complaint merely alleges conclusions, without any factual support, and Plaintiff "did not and cannot allege" that Defendant agreed to advise Plaintiff on its insurance needs or on the availability of particular coverage. However, the Amended Complaint explicitly alleges that Defendant "served as Plaintiff's insurance broker for the *agreed upon purpose* of evaluating Plaintiff's insurance needs, determining the scope of coverage and coverage limits needed, and obtaining bids and procuring insurance coverage for Plaintiff sufficient to adequately insure against the risks facing Plaintiff's business" (emphasis added). The Amended Complaint further alleges, *inter alia*, that Defendant became thoroughly educated on all operations and phases of the Plaintiff's business and attended meetings of Plaintiff's Board of Directors; held

itself, and continued to hold itself, out as having expertise in the insurance requirements of financial institutions; and Plaintiff's relied on these representations in making its decisions on the type and amount of coverage based on the recommendations.

The insurance broker has no duty to advise the insured about what insurance is needed or what insurance to buy unless the broker specifically undertakes to do so. *Emerson Electric Co*, 362 S.W.3d at 9. To the extent that the Amended Complaint alleges that Defendant "undertook duties in addition to those imposed by law, its failure to fulfill them may be actionable." *Id.* at 10. Here, the Amended Complaint alleges that Defendant took an expanded role in procuring insurance coverage for Plaintiff. The Court observes taking the allegations contained in the Amended Complaint as true, Plaintiff has adequately pled its action. Plaintiff is not required to prove the merits of its cause of action at the pleading stage, rather Plaintiff is required only to set out a plausible claim. *Twombly*, 550 U.S. at 556.

## Conclusion

Plaintiff has set forth sufficient facts to plausibly state a claim for negligence and breach of a fiduciary duty beyond the usual duty of care in procuring insurance. As such, Defendant's Motion to Dismiss Plaintiff's First Amended Complaint will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss Plaintiff's First Amended Complaint, [Doc. No. 21], is **DENIED**.

Dated this 1st day of March, 2022.

_____

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE